# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF OKLAHOMA

THE YAFFE COMPANIES, INC.,        )
                                  )
            Plaintiff,            )
                                  )
v.                                )    No. CIV-05-466-FHS
                                  )
GREAT AMERICAN INSURANCE          )
COMPANY, INC.                     )
                                  )
            Defendant.            )

## OPINION AND ORDER

Before the Court for its consideration are the cross-motions for summary judgment filed by Defendant, Great American Insurance Company, Inc. ("Great American"), on its counterclaim for declaratory relief pursuant to 28 U.S.C. § 2201 and Plaintiff, The Yaffe Companies, Inc. ("Yaffe"), on its breach of contract and declaratory relief claims. At issue in this litigation is the interpretation of a Commercial Umbrella Policy, TUU 5-59-57-92-00, issued by Great American to Yaffe. In its motion for summary judgment, Great American seeks a declaration that the coverage under its umbrella policy is not triggered until the $1,000,000 limits of the underlying, primary policy issued to Yaffe by American Insurance Company ("ACE") have been exhausted by the payment of claims and that it has no obligation to reimburse Yaffe for payments made under the deductible provision of Yaffe's underlying policy of insurance with ACE. Having fully reviewed the materials submitted, the Court finds Great American is entitled to the entry of summary judgment as requested. Based on this ruling in favor of Great American, Yaffe's motion summary judgment must be denied.

**Background**

The facts which are central to the resolution of this controversy are straightforward and not in dispute. A Commercial General Liability Policy, D35980490, was issued by ACE to Yaffe with a $1,000,000 Each Occurrence Limit and a $2,000,000 General Aggregate Limit for the period of October 1, 2004, through October 1, 2005. This ACE policy was subject to a $10,000.00 per claim deductible. The premium paid by Yaffe on the ACE policy was $139,012.00. On October 1, 2004, Great American issued its Commercial Umbrella Policy to Yaffe providing $25,000,000 in coverage for a premium of $272,310.00. Similar to the ACE policy, the Great American policy was effective through October 1, 2005.

On December 28, 2004, an explosion occurred at Yaffe's scrap yard in Muskogee, Oklahoma. This explosion caused Yaffe to incur substantial liabilities to third parties for property damage and bodily injury. According to Yaffe, it has incurred $1,785,986.89 in total liabilities as a result of this explosion. Most of the claims resulting from this explosion were for less than $10,000. Yaffe contends ACE has covered $497,999.10 of those liabilities under the $1,000,000 primary policy of insurance issued to Yaffe by ACE and that Yaffe has covered the remaining $1,287,987.79 through the application of the $10,000 per claim deductible under the ACE policy.

On October 14, 2005, Yaffe initiated this action against Great American by filing a Petition in the District Court of Muskogee County, Oklahoma, asserting claims for breach of contract and declaratory judgment. In connection with its breach of contract claim, Yaffe contends it is entitled to reimbursement from Great American for the $1,287,987.79 it has paid out to claimants as a

result of the explosion.  In its request for declaratory relief, Yaffe seeks a declaration that Great American is liable to reimburse it for all payments it has made, or will make, as a result of the explosion or, in the alternative, that Great American is liable for all of Yaffe's liabilities resulting from the accident that exceed $1,000,000, regardless of who pays the first $1,000,000 in claims.  On November 21, 2005, Great American filed its Notice of Removal in this Court.  On November 22, 2005, Great American filed a counterclaim against Yaffe asserting a claim for declaratory relief.  In its counterclaim, Great American requests a declaration that there is no coverage under its commercial umbrella policy issued to Yaffe for the claims arising out of the explosion until the $1,000,000 limits of coverage provided by the ACE primary policy have been exhausted by the payment of claims and that the deductible payments made by Yaffe do not figure into the calculation of the $1,000,000 limits of coverage.

**Analysis**

The standards relevant to the disposition of a case on summary judgment are well established.  Summary judgment is appropriate if there is no genuine issue of material fact.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 249-51 (1977).  In order for the moving party to secure the entry of summary judgment on a particular claim or issue, those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which establish the absence of any genuine issue of material fact as to that claim or issue must be identified.  <u>Universal Money Centers v. AT&T</u>, 22 F.3d 1527, 1529 (10th Cir.), <u>cert. denied</u>, 115 S.Ct. 655 (1994) (quoting Fed. R. Civ. P. 56(c)).  "A fact is 'material' only if it 'might affect the outcome of the suit under the governing law,' and a dispute about

3

a material fact is 'genuine' only 'if the evidence is such that a reasonable jury could return a verdict for the non-moving party.'" Thomas v. IBM, 48 F.3d 478, 486 (10th Cir. 1995) (quoting Anderson, 477 U.S. at 248). This court's function is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 249.

Under Oklahoma law[1], the standards governing insurance coverage disputes are equally well settled. Insurance coverage disputes are evaluated under the core principle that an insurance policy is a contract. First Bank of Turley v. Fid. & Deposit Ins. Co., 928 P.2d 298, 302 n. 6 (Okla. 1996). Issues of policy interpretation and whether a policy is ambiguous are determined as a matter of law by the Court. Dodson v. St. Paul Ins. Co., 812 P.2d 372, 376 (Okla. 1991). The Court's initial task is to "determine as a matter of law whether the policy language at issue is ambiguous." Duensing v. State Farm Fire and Casualty Company, 131 P.3d 127, 134 (Okla. Civ. App. 2006). "The test for ambiguity is whether the language is susceptible to two interpretations on its face . . . from the standpoint of a reasonably prudent lay person, not from that of a lawyer." Spears v. Shelter Mut. Ins. Co., 73 P.3d 865, 869 (Okla. 2003)(quotation omitted). "If language of a contract is clear and free of ambiguity the court is to interpret it as a matter of law, giving effect to the mutual intent of the parties at the time of contracting." Pitco Prod. Co. v. Chaparral Energy, Inc., 63 P.3d 541, 545 (Okla. 2003)(footnotes omitted). Policy language which is not ambiguous is accepted "in

---

[1] Oklahoma law applies to this action which was removed on the basis of diversity jurisdiction. See Southern Hospitality, Inc. v. Zurich American Ins. Co., 393 F.3d 1137, 1139 (10th Cir. 2004).

4

its plain, ordinary and popular sense." Duensing, 131 P.3d at 134. All provisions of the policy must be given effect, see Cranfill v. Aetna Life Ins. Co., 49 P.3d 703 (Okla. 2002), and the Court must give a liberal construction to words of inclusion in favor of the insured and a strict construction to words of exclusion against the insurer, see McDonald v. Schreiner, 28 P.3d 574 (Okla. 2001). "The mere fact parties disagree or press for a different construction does not make an agreement ambiguous." Pitco, 63 P.3d at 545.

The resolution of the instant dispute involves an interpretation of two provisions of the Great American Policy. The first provision, the "Coverage" provision of the policy provides, in relevant part:

> We will pay on behalf of the "Insured" those sums in excess of the "Retained Limit" that the "Insured" becomes legally obligated to pay by reason of liability imposed by law or assumed by the "Insured" under an "insured contract" because of "bodily injury," "property damage," "personal injury," or "advertising injury" that takes place during the Policy Period and is caused by an "occurrence" happening anywhere.

Great American Policy, Form GAI 6002, Insuring Agreements, Section I, Coverage, p. 1, GAI 0016. The second provision defines "Retained Limit" and provides, in relevant part:

> We will pay only for that portion of damages, subject to the Each Occurrence Limit stated in the Declarations, in excess of the "retained limit," which is the greater of:
>
> > 1. the total amounts stated as the applicable limits of the underlying policies listed in the Schedule of Underlying insurance and the applicable limits of any other insurance providing coverage to the "Insured" during the Policy Period; or

> 2. The amount stated in the Declarations as Self-Insured Retention as a result of any one "occurrence" not covered by the underlying policies listed in the Schedule of Underlying Insurance nor by any other insurance providing coverage to the "Insured" during the Policy Period;[2]

Great American Policy, Form GAI 6002, Insuring Agreements, Section I, Retained Limit, p. 2, GAI 0017.

These provisions define the scope of Great American's obligation under this umbrella policy in clear and unambiguous terms. The "Coverage" provision obligates Great American to pay only "those sums *in excess of* the 'Retained Limit' that [Yaffe] becomes legally obligated to pay." (Emphasis added). The "Retained Limit" is defined under the policy as "the total amounts stated as the applicable limits of the underlying policies listed in the Schedule of Underlying insurance." Reference to the Schedule of Underlying insurance contained within the Great American policy reveals that the "applicable limits of the underlying polic[y]" is the $1,000,000 *in coverage* under the ACE policy. This definition of "Retained Limit" makes no reference to deductible amounts under primary policies. Rather, the reference is to the limits of the underlying policies, i.e. the coverage available. Payment of deductible amounts cannot, therefore, be considered in the calculation of payments "in excess of the 'Retained Limit'." Any attempt to include deductible payments as payments "in excess of"

---

[2] Subpart 2 of this "Retained Limit" definition is the Self-Insured Retention amount stated in the Declarations. The Declarations page lists the Self-Insured Retention amount as $ -0-. Thus, subpart 1 - the applicable limits of the underlying policies listed in the Schedule of Underlying insurance - is the greater amount for purposes of calculating the "Retained Limit" under the policy definition.

6

the limits of the ACE primary policy manifests a strained construction of the policy and must fail as simply not supported by the plain language of the Great American policy.  To the contrary, a plain, ordinary interpretation of the language within the "Coverage" and "Retained Limit" provisions results in a construction which obligates Great American to make payments under its umbrella coverage at the point when Yaffe becomes legally obligated to pay sums in excess of or, stated another way, after exhaustion of, the $1,000,000 coverage provided by the ACE policy.

This construction of the Great American policy is consistent with fundamental principles applicable to umbrella policies.[3]  An umbrella policy provides coverage that is in excess to that of the primary policy.  As its name indicates, and as the plain language of the document substantiates, Great American's umbrella policy provides excess coverage.[4]  "The liability of an insurer under an 'excess insurance' clause arises only after the limits of the

---

[3] It is also consistent with the "When Loss Is Payable" provision of the Great American policy which provides that there is no coverage "unless and until any 'insured' or an 'insured's' underlying insurer is obligated to pay the 'retained limit.'" Great American Policy, Form GAI 6002, Insuring Agreements, Section VI, Conditions, When Loss Is Payable, p. 13, GAI 0028. As applicable to the facts herein, this provision reflects the implication of Great American's coverage only after ACE is obligated to pay the $1,000,000 in coverage or Yaffe, by reason of any default on the part of the ACE, becomes obligated to contribute up to the $1,000,000 limit.

[4] Further support for the excess nature of Great American's policy can be found by comparing the premiums paid for the respective policies.  Yaffe paid a premium of $139,012 for $1,000,000 in "per occurrence" coverage under the ACE policy - a 13.9% premium rate.  Yaffe paid a premium of $272,310 for $25,000,000 in coverage under the Great American policy - a 1.1% premium rate.  The modest premium rate under the Great American policy is reflective of an appreciably lower risk due to the applicable primary coverage under the ACE policy.

7

primary policy are exhausted." Ryder Truck Lines, Inc. v. Carolina Casualty Insurance Company, 372 N.E. 2d 504, 511 (Ind. App. 1978)(citing 8 Appleman, Insurance Law & Practice § 4914), vacated on other grounds, 270 Ind. 315, 385 N.E.2d 449 (Ind. 1979). When determining the limits of the primary policy, it is generally understood that "an excess insurer does not reimburse the insured for the amount of the primary policy deductible." Couch on Insurance, (3rd Ed.), § 220:36. The rationale for not including deductible payments as part of the limits of the underlying policy is grounded in the insured's decision to, in essence, become self-insured for the deductible amount as a result of the bargain reached with the primary insurer:

> Thus, the "excess" liability contemplated focuses on the upper limits of the other insurance policy. The deductible provision does not affect this construction of [the] excess insurance clause. This result is consistent with the intentions of the parties. Where an insured purchases a liability policy with a deductible provision, the reduction in coverage results in lower premiums. Up to the deductible amount the expectation is that he will be a "self-insurer." At the same time the excess insurer, contemplating the possibility that other insurance exists to cover the same risk, limits its liability to amounts over and above that coverage. In such a situation the excess insurance clause should not be extended to cover an amount for which the insured, . . . , has bargained to become a "self-insurer."

Ryder Truck Lines, Inc., 372 N.E.2d at 511; see also Transport Indemnity Company v. Carolina Casualty Insurance Company, 133 Ariz. 395, 407, 652 P.2d 134, 145 (Ariz. 1982). Consequently, the existence of the $10,000 deductible provision in the ACE policy does not enter into the calculation of the "Retained Limit" under

8

Great American's umbrella policy.[5]

Yaffe makes several arguments in support of a construction that obligates Great American to pay in excess of the $1,000,000 in liabilities it has incurred as a result of its payments under the deductible provision. First, Yaffe contends the relevant provisions of the umbrella policy do not contain an exhaustion requirement which would require the underlying ACE policy to be exhausted before Great American becomes liable. Yaffe notes that if Great American had intended exhaustion it would have used such language in the "Coverage" section of the policy as it did in the "Defense" section of the policy which obligates Great American to defend Yaffe when the limits of any underlying policies "have been exhausted by actual payment of 'claims'." Great American Policy, Form GAI 6002, Insuring Agreements, Section III, Defense p. 2, GAI 0017. Second, Yaffe argues the language of the "When Loss Is Payable" section of policy providing for coverage when "any 'insured' or an 'insured's' underlying insurer is obligated to pay the 'retained limit'," Great American Policy, Form GAI 6002, Insuring Agreements, Section VI, Conditions, When Loss Is Payable, p. 13, GAI 0028, supports a finding that Great American's coverage is not dependent on the payment of $1,000,000 in coverage, but rather, can be satisfied by payments by both ACE and Yaffe, including payments made pursuant to the deductible. Finally, Yaffe contends that if Great American had intended that the deductible

---

[5] If this deductible amount is considered "other insurance" as a self-insured amount, see Air Liquide America Corp. v. Continental Casualty Co., 217 F.3d 1272, 1279 (10th Cir. 2000)(under Oklahoma law, self-insurance is other collectible insurance within meaning of other insurance provision of insurance policy), the Great American coverage is in excess of that self-insurance as set forth in the second portion of both subparts 1 and 2 of the "Retained Limit" definition of the policy.

9

payments not affect the implication of its coverage, it could have written the "Retained Limit" section to reflect that choice by including language regarding deductables and self-insured amounts.[6]

The Court finds none of these arguments overcome the plain, ordinary construction of the policy at issue herein and the application of the fundamental principles governing umbrella policies. Utilizing language which requires payments "in excess of" specified coverage is, in the Court's view, no different than saying an underlying policy must be exhausted before coverage is implicated. A provision which recognizes that no loss will be payable until the "insured or an Insured's underlying insurer" is obligated to pay the "Retained Limit" does not suggest that the insured's payment of its agreed upon deductible is to be considered part of the calculation of the "Retained Limit." Rather, this provision merely reflects the reality that Great American's coverage is not implicated until either ACE or Yaffe, upon default

---

[6] Yaffe references another policy written by Great American - not an umbrella policy - which contains the following provision:

> When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:
>
> (1) the total amount that all such other insurance would pay for the loss in the absence of this insurance; *and*
>
> *(2) the total of all deductibles and self-insured amounts under all that other insurance*

Excess Insurance Provision to Great American's Policy Form CG7841 (Ed. 11/94) XS (emphasis added).

by Ace, is obligated to pay the $1,000,000 in coverage, without any reference to payments made under a deductible negotiated between Yaffe and ACE.  Finally, the fact that Great American wrote a non-umbrella policy with language that included deductible and self-insured amounts as part of the "excess" amount calculation does not persuade the Court to find that the language chosen by Great American with respect to the instant umbrella policy is suggestive of an interpretation which considers deductible payments when determining whether Great American's coverage is implicated.  The Court's analysis herein is based on the language of the policy before it, not some other policy issued in a different context.

**Conclusion**

It is abundantly clear that the umbrella policy issued by Great American provides Yaffe with excess coverage to that provided by ACE under its primary policy of insurance.  As a result, the $25,000,000 excess coverage provided by Great American is not implicated until the $1,000,000 "Retained Limit" amount has been exhausted by payment of claims.[7]  To date, ACE has not paid the limits of its $1,000,000 "Retained Limit" coverage - ACE's payments total $497,999.10.  Thus, Great American's obligation under its umbrella policy has yet to be triggered; consequently, Great American has not breached its contractual obligations to Yaffe. Moreover, the Court concludes that in calculating the "Retained

---

[7] The payment of the $1,000,000 in claims could conceivably be made by either ACE fulfilling its contractual obligations or by Yaffe (above the deductible amount) to cover those claims which ACE wrongfully refuses to pay.  Here, however, the undisputed evidence is that ACE has fulfilled its obligations under the primary coverage by making payments of claims, after application of the deductible provision, in the amount of $497,999.10.

11

Limit" under the Great American policy, the deductible payments made by Yaffe under the ACE policy are not part of that calculation.

Great American's Motion for Summary Judgment is therefore granted and judgment is entered declaring (1) the coverage provided by Great American under its Commercial Umbrella Policy is not triggered until the limits of the underlying ACE policy have been exhausted by the payment of claims in the amount of $1,000,000, (2) the deductible payments by Yaffe in the amount of $1,287,987.79 under the ACE policy do not enter into the calculation of the "Retained Limit" amount under the Great American policy, and (3) Great American has no obligation to reimburse Yaffe for any part of the $1,287,987.79 deductible amount paid by Yaffe to claimants under its primary policy of insurance with ACE. Yaffe's Motion for Summary Judgment is denied.

**IT IS SO ORDERED** this 12th day of May, 2006.

Frank H. Seay
United States District Judge
Eastern District of Oklahoma